MALONEY *v.* HALE.

Opinion delivered May 8, 1922.

HUSBAND AND WIFE—WIFE PERMITTING HUSBAND TO USE HER PROPERTY.
—Where a wife permitted her husband to use her money and personal property as an apparent basis of credit, she is estopped from claiming the property as against one who extended credit to her husband on the faith thereof.

Appeal from Monroe Chancery Court; *John M. Elliott,* Chancellor; reversed.

STATEMENT OF FACTS.

John Maloney brought this suit in equity against J. W. Hale and M. E. Hale, his wife, to subject certain property claimed by the wife to a judgment against her husband. On the 26th day of May, 1914, John Maloney obtained judgment before a justice of the peace against J. W. Hale for the sum of $100 and the accrued interest.

According to the testimony of C. F. Greenlee, he has been engaged in the practice of law in Brinkley, Ark., since August 21, 1891. He is well acquainted with J. W. Hale and M. E. Hale, his wife. J. W. Hale has been engaged in the grocery, furniture and hardware. business in Brinkley, Ark., for the past twenty-eight years. Sometimes he has done business in the name of M. E. Hale & Co., and sometimes in the name of Hale & Co. J. W. Hale has given his entire time and attention to the business, and M. E. Hale has never even assisted in conducting the business. During this time J. W. Hale has acquired valuable real estate and has purchased and erected a brick store in which he now conducts the mercantile business. This building adjoins the office building of the witness. The stock of goods which J. W. Hale manages is worth at least $5,000, and the real estate which he controls is worth about $10,000. On December 15, 1917, J. W. Hale leased a store-room belonging to Jas. Gunn and C. F. Greenlee and directed Greenlee to make the lease in Hale's own name. Greenlee had made out the lease in Hale's wife's name because he understood that he was doing business in her name. Hale objected to the lease being in this form and directed Greenlee to change it to Hale himself. J. W. Hale has no property whatever in his own name, but the property in his wife's name has been accumulated entirely through his management and energy. Mrs. Hale has given no time or attention whatever to the business.

John Maloney was a witness for himself. According to his testimony he had been in the store of Hale & Co., and J. W. Hale was the only one conducting the business.

He had never been paid anything on the judgment which he obtained against J. W. Hale.

Two other witnesses testified that they had known J. W. Hale and his wife, M. E. Hale, for over twenty years, and that J. W. Hale had charge of the business and gave all of his time and attention to it. The witnesses were well acquainted with the parties, but never saw Mrs. Hale looking after the business in any way. They did business with Mr. Hale and the bills were always entered in the name of Hale & Co.

According to the testimony of J. W. Hale, he failed in business in Brinkley in the year 1892 or 1893. Since then he has not accumulated any property in his own right. His wife engaged in mercantile business about a year after his failure and he became the manager of her business. His wife's brother-in-law gave her the money with which she commenced the business. He gave the dates and amounts of these gifts. They ranged in amounts from $20 to $200 each, and amounted to about $1,950.

According to the testimony of M. E. Hale, she engaged in business with money furnished by her brother-in-law, and her husband conducted the business for her. All the property she now owns was acquired prior to the year 1909, while her husband managed her business. During the year 1909 her husband became mentally incompetent and was confined in a sanitarium for a while. Since then he has not superintended her business exclusively, and is not now mentally competent to conduct it. Her sons conduct her business for the most part. Her husband went back in the store when he returned from the sanitarium, and has been there ever since. Mrs. Hale further stated that she went to market sometimes and did part of the buying herself. Her testimony with regard to her husband's being confined in a sanitarium for mental unsoundness was corroborated.

The chancellor found the issue for the defendants, and it was decreed that the complaint of the plaintiff

should be dismissed for want of equity. To reverse that decree the plaintiff has duly prosecuted this appeal.

*C. F. Greenlee,* for appellant.

Where a married woman permits her husband to use her property as an apparent basis of credit, she will be estopped from claiming the property as against creditors who extend the credit to her husband. 84 Ark. 227; 126 Ark. 591; 136 Ark. 604; 147 Ark. 174.

Where, however, through the husband's skill in the management of a business, the capital being furnished by the wife, profits are made and invested in real estate in the name of the wife, the real estate has been held to be the property of the husband, and liable for his debts. 21 Cyc. 1392; 20 Cyc. 360; 56 L. R. A. 938; 85 Ky. 168; 35 S. W. 106; 12 Bush. 303; 53 S. W. 528.

*Bogle & Sharp,* for appellees.

Although the husband gives his time and attention the management of his wife's estate, the rents and profits arising therefrom cannot be subjected to the payment of his debts. 75 Ark. 562; 89 Ark. 77.

The husband had the right to give his personal service to the management of his wife's property. The result of his labor is not subject to his debts. 123 Mo. 450; 107 Ia. 649; 154 Mo. 415; 55 S. W. 441. His control was only that of agent, and did not affect her rights. 7 Vroom (N. J. Eq.) 481; 83 Mo. App. 151; 21 Ind. 115; 21 Ill. App. 282; 10 Mich. 333.

HART, J. (after stating the facts). Counsel for the plaintiff seeks to reverse the judgment upon the doctrine laid down in *Roberts* v. *Bodman-Pettit Lumber Co.,* 84 Ark. 227; *McClintock* v. *Skinner Co.,* 126 Ark. 591, and *Talley* v. *Davis,* 136 Ark. 604. In those cases, as well as other cases, this court has held that where a married woman permits her husband to hold her personal property out as his own and to use it as an apparent basis of credit, she will be estopped as against her husband's creditors to claim it as her own.

On the other hand, counsel for the defendants seek to uphold the decree on the doctrine of *Sharp* v. *Fitzhugh,* 75 Ark. 562. In that case it was held that the wife's property is not liable to her husband's creditors for its increase or enhancement in value on account of any reasonable contribution of his time, labor, or skill in the management of it. The reason is that creditors cannot compel the husband to work for them, and cannot command his skill or labor. The wife has the right to control the profits of her own property, and her husband may manage it for her. There is a marked distinction, however, between the wife's entrusting the entire management and control of her separate property or business to her husband when the business is openly conducted as her own, and in suffering her own money to be used in a business by her husband, and blended with his earnings so that it cannot be separated. Equity looks to the substance of a transaction and not its form. It disregards all matters of form and is governed by the facts. The substance of the present transaction is that the wife permitted her money to be used by her husband in carrying on a business under the name of Hale & Co. Her money and the business skill and industry of her husband cannot be separated. He used her money in building up the business and gained credit on the faith of it. A preponderance of the evidence shows that the husband devoted his whole time, energy and skill to the management and conduct of the mercantile business. The bills were sent out in the name of Hale & Co. The wife never gave any attention whatever to the business. Her husband obtained credit on the faith of its being his own business. Husband and wife occupy the most confidential relation in life, and it is well settled that the wife cannot give her money to her husband and permit him to use it for a long series of years in obtaining credit and then claim that the profit derived from the use by her husband is exempt from the claims of his creditors.

We are of the opinion that the course of conduct of Mrs. Hale in permitting her husband to use her money and property as an apparent basis of credit estops her from claiming the property against the plaintiff, who extended credit to her husband on the faith thereof.

Therefore the chancery court erred in dismissing the complaint of the plaintiff for want of equity, and for that error the decree will be reversed and the cause remanded, with directions to grant the prayer of the plaintiff's complaint, and for further proceedings in accordance with the principles of equity.