LIPSCOMB *v.* LIPSCOMB.

5-1080                                    295 S. W. 2d 335

Opinion delivered November 12, 1956.

*Coleman & Mayes* and *Barber, Henry & Thurman,* for appellant.

*Cecil Grooms,* for appellee.

GEORGE ROSE SMITH, J. In the court below the appellee was granted a divorce from her husband upon the ground of personal indignities. The decisive question presented by the appeal is whether the plaintiff's proof is sufficient to establish her cause of action.

The couple were married in 1936 and lived together until July of 1955. They have no children. There is no reason to believe that Mrs. Lipscomb ever gave serious consideration to the institution of a suit for divorce during the nineteen years that she lived with her husband. In her testimony, which is corroborated only sketchily, Mrs. Lipscomb describes a few quarrels of the kind that not infrequently occur between husbands and wives. There is no suggestion of physical violence on the part of Lipscomb, who seems at the worst to have been somewhat sullen on a number of occasions. Lipscomb earned a substantial income as a public accountant and provided a good home for his wife in Paragould. He also maintains a home for her parents in Little Rock, on which they make only the mortgage payments. It is evident that Mrs. Lipscomb is of nervous temperament; she suffered a mental breakdown in 1953 and was confined to the State Hospital for several months. This affliction, however, is not shown to have been the result of marital difficulties; rather, it seems to be a family weakness, as Mrs. Lipscomb's sister and younger brother have had similar experiences.

The parties' separation came about as the result of a visit which Mrs. Lipscomb paid to her sister, Edna McLaughlin, in Gardiner, Maine. In connection with this visit Lipscomb drove his wife as far as St. Louis, where they bought furniture for their home in Paragould.

After spending two days in St. Louis with her husband Mrs. Lipscomb went to Maine to visit the McLaughlins. In the early part of that visit she talked with her husband by telephone from time to time and received a birthday present from him.

Later on, however, Mrs. Lipscomb's brother-in-law made statements to her which undoubtedly led to the filing of this suit. Dr. McLaughlin told Mrs. Lipscomb that in December of 1953, and again in October of 1954, Lipscomb had discussed with him an affair that Lipscomb was having with a young girl in Paragould. According to McLaughlin, Lipscomb displayed a number of pictures that he had taken of this girl in the nude. McLaughlin's testimony is wholly uncorroborated and is denied by the appellant.

After receiving these disclosures Mrs. Lipscomb returned to Paragould without letting her husband know that she was coming. There she broke into the family home, gathered up her clothes, and went to live with her parents in Little Rock. She refuses to consider the possibility of a reconciliation or even to discuss the matter with her husband. The chancellor postponed the decision of the case in the hope of saving the marriage, but when that effort failed he granted the divorce upon the ground of personal indignities.

In our opinion the proof falls short of establishing a ground for divorce. The suspicion of adultery may be laid aside at the outset. That is not the ground alleged in the complaint, nor is that cause of action supported by the proof. Even if McLaughlin's testimony is accepted at face value it shows only an uncorroborated admission by a party to the suit — testimony upon which a divorce cannot be granted. *Scarborough* v. *Scarborough,* 54 Ark. 20, 14 S. W. 1098.

On the issue of indignities the statute requires that the offending spouse's conduct must have rendered the other's condition intolerable. Ark. Stats. 1947, § 34-1202. In retrospect Mrs. Lipscomb complains of various small grievances in the course of her married life, but there is no reason to think that the appellee found these

matters to be beyond her tolerance at the time. To the contrary, she accepted them without complaint and had no notion of a divorce when she left for the visit with her sister. It may be true, as the chancellor evidently believed, that the parties are not likely to live together again, despite the appellant's hopes of bringing about a reunion. But, as we pointed out in *Davis* v. *Davis,* 163 Ark. 263, 259 S. W. 751, such a situation does not warrant the granting of a divorce in the absence of proof that a statutory ground therefor exists.

Reversed and dismissed.